[Civ. No. 18358.   Second Dist., Div. Two.   July 12, 1951.]

ANTHONY MASCIOTRA, Appellant, v. ROY HARLOW, Respondent.

Warner, Peracca & Cowan for Appellant.

Clifford A. Rohe and Harry J. Gross for Respondent.

WILSON, J.—Plaintiff-lessor brought this action to recover damages for alleged nonperformance by defendant-lessee of covenants in a lease. This appeal is from a judgment in favor of defendants.

In January, 1945, plaintiff as lessor leased to defendants certain premises on Ventura Boulevard in Los Angeles County for the purpose of operating a restaurant. The lease, which was for a term of five years from March 15, 1945, provided for a monthly rental of 7 per cent of the gross receipts with a minimum of $250.

Defendants went into possession under the lease and began operating the café. They changed the name of the establishment to the "Pump Room" and displayed a large sign with a pump painted thereon. A few months later defendant Loomis assigned his interest to defendant Harlow, who thereafter conducted the business alone. The venture was successful and for a period of three and a half years the average monthly rental payment to plaintiff was in excess of $1,000.

In November, 1948, Harlow opened a restaurant on property owned by him on Ventura Boulevard, about 1½ miles from that leased from plaintiff. He transferred from plaintiff's premises to the new location the name "Pump Room," together with the painted sign of the pump and about two thirds of the personnel of the original Pump Room restaurant. The café on plaintiff's premises was changed to a Chinese restaurant. It was not successful and receipts from the business dropped. Rentals fell to some $300 and then to the minimum of $250 a month. A few months later Harlow

changed the café back to an American restaurant but the business still did not prosper and plaintiff's rentals remained at the minimum.

On April 5, 1949, plaintiff sent defendant a notice of breach of the lease agreement but did not declare a forfeiture nor re-enter the premises or take possession until the term of the lease expired. By this action plaintiff seeks to recover damages for loss of rentals allegedly occasioned by the removal of the Pump Room restaurant prior to the expiration of the lease.

Paragraph 12 of the lease provides as follows: "It is further expressly understood and agreed that it is in nowise the intention of the parties hereto to enter into or create a partnership or a joint venture in any shape, manner or form; that the care and/or restaurant business that shall be created and carried on by the Lessee, and the good will thereof, shall belong to and shall remain the sole property of the Lessee, with the full right to maintain and carry on its said business at any other place or places after the end or sooner termination of the within Lease; that the Lessor shall have no responsibility or liability by reason of the maintenance or conduct of the said business by the Lessee, who shall save the Lessor harmless from any and all claims and law-suits that shall be brought against the Lessor based on such claimed responsibility or liability."

Plaintiff contends the removal by defendant of the business and the good will prior to the expiration of the lease was a violation (1) of the express provisions of paragraph 12 of the lease and (2) of an implied covenant.

Plaintiff asserts that the restraint imposed by paragraph 12 does not go so far as to prohibit defendant from carrying on a restaurant business in competition with that on plaintiff's premises at another place less than 2 miles distant during the term of the lease but that the "activity prohibited was the carrying on in another place of the Lessee's 'said business,' that is, 'the business that shall be created and carried on by the Lessee, and the good will thereof.'" It is expressly provided in that paragraph of the lease that the "business that shall be created and carried on by the Lessee, and the good will thereof, shall belong to and shall remain the sole property of the Lessee . . ." *Collas* v. *Brown*, 211 Ala. 443 [100 So. 769], cited by plaintiff, does not support his contention. In that case the court held that a covenant not to compete is a thing apart from the "good will" and such an

implied covenant does not go with the sale of the good will nor can a written contract selling the good will only be enlarged by parol to include an express covenant not to engage in a competing business. The only language in paragraph 12 which lends any support to plaintiff's contention, and which might be construed as imposing a restriction, is that contained in the words following those quoted above " . . . with full right to maintain and carry on its said business at any other place or places after the end or sooner termination of the within lease." Taking the instrument as a whole, however, this language cannot be construed as an express covenant upon the part of defendant not to carry on his business at another location until after the termination of the lease. In paragraph 17 of the lease plaintiff agrees that during the term thereof "he will not have any interest in or conduct or carry on, directly or indirectly, under the name Palomine Cafe, or otherwise, any cafe or restaurant business within a radius of two square miles of the present location of Lessee's business . . ." There is no corresponding agreement upon the part of defendant not to open other restaurants during the term of the lease, nor to operate a cafe elsewhere under the name "Pump Room," nor does defendant agree not to change the name or character of the restaurant to be operated on plaintiff's premises. Defendant did not purchase a going business but leased "the physical equipment, facilities and contents of the cafe." The parties had no means of knowing whether the venture would succeed or fail and by paragraph 12 it was expressly agreed that it was not their intention to engage in a partnership or joint venture and the business that was to be created would remain the sole property of defendant. The language following such express agreement, which is preceded by the word "with" is permissive and not prohibitory and but emphasizes such intention.

Plaintiff cites four cases in support of his contention that there is an implied covenant that lessee would, during the term of the lease, so conduct his business on plaintiff's premises as to make it mutually profitable to both parties: *Selber Bros.* v. *Newstadt's Shoe Stores,* 194 La. 654 [194 So. 579] ; *Cissna Loan Co.* v. *Baron,* 149 Wash. 386 [270 P. 1022] ; *Mayfair Operating Corp.* v. *Bessemer Properties,* 150 Fla. 132 [7 So.2d 342] ; *Garden Suburbs etc. Club* v. *Pruitt,* 156 Fla. 825 [24 So.2d 898]. These cases are all distinguishable from the instant case. In the Selber Bros. case the lease

involved was a renewal of a lease twice previously renewed on the same terms. At the time the last renewal was made defendant was well established and the parties knew 6 per cent of the gross sales had averaged $400 a month, which was double the minimum rent. In the Cissna case the defendant purchased an established department store business from plaintiff and leased plaintiff's building, agreeing to pay rent based on a percentage of gross sales with a yearly minimum. The Mayfair case involved the lease of a theatre at a minimum monthly rental in addition to a percentage of gross revenue. The lessee expressly agreed to use its best efforts to obtain and maintain the highest volume of business on the premises. Defendant failed to operate the theatre for a period of four months resulting in a material reduction in the gross revenue. It was held that the lease required defendant to operate the premises continuously. The Garden Suburbs case involved a lease and a sublease and the facts and questions under consideration are not analogous to those herein. Each of the foregoing cases had to do with an established, going business.

In the instant case the lease was not a renewal of a prior lease; there was no established business which the parties could take into consideration in determining the minimum rental. On the contrary it was a new venture and the parties had no way of estimating the probable revenue. Under such circumstances it can only be concluded that the parties considered the stipulated minimum rent to be in itself fair and adequate and any additional sum was in the nature of a bonus which the lessee was willing to pay if his business exceeded his expectations.

The facts in *Cousins Inv. Co.* v. *Hastings Clothing Co.*, 45 Cal.App.2d 141 [113 P.2d 878], are more comparable to the instant case. The lease was of a four story building occupied by defendant in carrying on a men's clothing and furnishing business and provided for a rental of 5½ per cent of the gross income with a $4,000 monthly minimum. Approximately two months prior to the expiration of the lease defendant moved its business to another location. It paid the minimum rental for the full term of the lease and plaintiff thereafter brought an action to recover the percentage rental which it claimed it would have received had defendant remained in business on the premises until the expiration of the lease. The court, quoting from *Freeport Sulphur Co.* v. *American Sulphur Royalty Co.*, 117 Tex. 439 [6 S.W.2d 1039, 60 A.L.R. 890], which in turn quoted from *Grass* v. *Big Creek Development*

*Co.*, 75 W.Va. 719 [84 S.E. 750, L.R.A. 1915E 1057], stated as follows at page 147: "Implied covenants can only be justified upon the ground of legal necessity. Such a necessity may arise out of the terms of the contract or out of the substance thereof. One absolutely necessary to the operation of the contract and the effectuation of its purpose is necessarily implied whether inferable from any particular words or not. It is not enough to say it is necessary to make the contract fair, or that it ought to have contained a stipulation which is not found in it, or that, without such covenant, it would be improvident or unwise or would operate unjustly; for men have the right to make such contracts. Accordingly courts hesitate to read into contracts anything by way of implication, and never do it except upon grounds of obvious necessity."

The court summarized the rules when covenants may be implied as follows (p. 149): "(1) the implication must arise from the language used or it must be indispensable to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; (5) there can be no implied covenant where the subject is completely covered by the contract." The court held there was nothing in the transaction to justify a finding that the implied covenant was indispensable to effectuate the intention of the parties; that when the rental to be received under the lease is based upon a percentage of the gross receipts of the business, with a substantial, adequate minimum, there is no implied covenant that the lessee will operate its business in the demised premises throughout the term of the lease. These comments are applicable in the action at bar.

A case involving facts almost identical with those in the case under consideration is *Palm* v. *Mortgage Inv. Co.*, (Tex. Civ.App.) 229 S.W.2d 869. In that case plaintiff operated a shoestore in premises leased from defendant. Prior to the termination of the lease plaintiff established a store in another location and removed the major portion of his business from the store building leased from defendant to the new location. Thereafter he materially and substantially curtailed his stock of merchandise and his manner of doing business in defendant's premises. He advertised the new location, transferred

part of his employees and devoted most of his time to the new business. The result was a material reduction in gross sales. In denying recovery to defendant, the court distinguished the case of *Selber Bros.* v. *Newstadt's Shoe Stores, supra,* and followed the decision of *Cousins Inv. Co.* v. *Hastings Clothing Co., supra,* and *Jenkins* v. *Rose's 5, 10 & 25¢ Stores,* 213 N.C. 606 [197 S.E. 174] cited in the Cousins case.

Much of the evidence introduced was of negotiations which took place prior to the execution of the lease. Since the agreement of the parties has been reduced to writing the written document supersedes all the oral negotiations and there can be no evidence of the terms of the agreement other than the contents of the writing. (Civ. Code, § 1625; Code Civ. Proc. § 1856; *Sorensen* v. *Commercial Credit Co.,* 16 Cal.App.2d 71, 74 [60 P.2d 169].)

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.