**E. J. STERN and Mabel Stern, Appellants,**

v.

**The DUNLAP COMPANY, a Corporation, Appellees.**

**No. 5158.**

United States Court of Appeals
Tenth Circuit.

Dec. 27, 1955.

---

L. E. Oman, Las Cruces, N. M. (Whatley & Oman, Las Cruces, N. M., on the brief), for appellants.

Charles Crenshaw, Lubbock, Tex., and Joseph Roehl, Albuquerque, N. M. (Crenshaw, Dupree & Milam, Lubbock, Tex., and Simms & Modrall, Albuquerque, N. M., on the brief), for appellees.

Before BRATTON, HUXMAN and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

E. J. Stern and Mabel Stern, husband and wife, instituted this action against The Dunlap Company, a corporation organized under the laws of Texas, seeking a declaratory judgment determining the rights and liabilities of the parties, respectively, under a written lease agreement. The litigation had its source in these facts. Plaintiffs owned a store building in Las Cruces, New Mexico, in which they had for many years conducted a dry goods mercantile business under the trade name White House. Plaintiffs conveyed the stock of merchandise and leased the premises to The Dunlap Company of Las Cruces; and shortly there-

after the lease was assigned to the defendant. The lease was dated April 1, 1946, and provided in conventional language that the lessors leased and let the premises to the lessee for a period beginning April 1, 1946, and ending December 31, 1955. The lease provided that the rental to December 1, 1947, should be 4.5 per cent of the gross sales of merchandise during such period; that thereafter the rental should be equal to 2.5 per cent of the gross sales; that in no case should the rental be less than $350 per month; that throughout the entire period rental should be paid monthly at the rate of $350 per month; and that at the end of each year any excess between the percentage of gross sales and the $350 per month should be paid. It further provided that the lessee had received the building in a good state of repair and should keep the inside thereof in a like condition of repair; that the lessors should keep the building in a tenantable condition insofar as the outside thereof was concerned; that the lessors should install a new and modern type department store front at their expense; and that any alterations or changes made on the inside of the building should be at the expense of the lessee. It further provided that the lessee should keep up the furnace and heating facilities for heating the building and that the lessors should reimburse the lessee for part of the cost thereby incurred; and that the lessors should pay the taxes and insurance premiums on the building. It further provided that the lessee should have the right to sublet the premises or assign the lease, provided that the lessors were first consulted, and provided further that any subletting or assignment should be to a similar type of business. And it further provided that if after five years from the date thereof the lessee should desire a lease on certain premises then occupied by a named drug store, and if at such time the parties were able to agree upon a further rental for such additional premises, the lessee should have the right and option to lease the additional premises until the end of "this lease."

Rental computed and paid in accordance with the terms of the lease for the years 1946, 1947, 1948, 1949, 1950, 1951, and 1952, amounted to $14,385.65, $18,314.60, $10,379.84, $8,057.40, $8,334.87, $9,132.-57, and $10,815.12, respectively.

In 1948, a disagreement arose between the parties in respect to the installation of the store front, for which provision had been made in the lease, but that disagreement was adjusted. In the fall of 1950, correspondence began between the parties respecting a lease upon the premises occupied by the drug store, to which reference had been made in the original lease. In December, the defendant was advised that plaintiffs would like to be released from that part of the existing lease relating to a lease upon the drug store premises. The reason given for such desire was that plaintiff E. J. Stern did not want to do business with the defendant. And a proposed release was submitted to the defendant with the request that it be executed and returned.

Early in 1953, the defendant opened another store in Las Cruces. The name of the business on the leased premises was changed from "Dunlap's White House" to "White House"; the sign in front of the building was changed accordingly by painting over the word "Dunlap's"; and the new store took the name "Dunlap's". Most of the better lines of high-grade merchandise were transferred from the store on the leased premises to the new store, and the store on the leased premises became a popular priced store. Charge accounts at the store on the leased premises were discontinued and customers wishing to charge merchandise purchased were referred to the new store. The store on the leased premises was advertised as a "Bargain Center", and the new store was advertised as "New Mexico's Finest Department Store". The amount expended for advertising the store on the leased premises was far less than that expended for advertising the new store. The merchandise carried in the store on the leased premises was reduced approximately fifty per cent; the personnel at the store

was reduced about fifty per cent; the window displays on the leased premises which had been attractive became unattractive; and the inside of the building fell into a state of disrepair. Due to a diminution in gross sales, the rental paid for 1953 amounted to only $4,268.15.

The prayer of the amended complaint was for a declaratory judgment fixing $10,815.12 as the fair and reasonable rental to be paid for each of the years 1953, 1954, and 1955; judgment for damages to the interior of the building; and judgment for damage to the reputation of the premises. The cause was tried to a jury. The court withdrew from the jury any issue relating to rental and any issue relating to injury or damage to the reputation of the premises. Thereupon, plaintiffs took a voluntary non-suit as to the issue of damage to the inside of the building. Judgment was entered accordingly, and the plaintiffs appealed.

■ Though frequently presenting difficulty in point of application, the general rules in respect to whether an issue of fact is presented for submission to the jury have been clearly blueprinted. It is the rule in the federal courts that on motion for a directed verdict, the evidence and the inferences which may be fairly drawn from the evidence must be considered in the light most favorable to the party against whom the motion is directed; and if the evidence and the inferences viewed in that manner are of such character that reasonable minded persons in the exercise of fair and impartial judgment may reach different conclusions upon the crucial issue, the motion should be denied and the issue submitted to the jury. Long v. Clinton Aviation Co., 10 Cir., 180 F.2d 665. But it is the province and duty of the court to direct a verdict where the evidence is without dispute, or is conflicting but of such conclusive nature that if a verdict were returned for one party the exercise of sound judicial discretion would require that it be set aside. Central Surety & Insurance Corp. v. Murphy, 10 Cir., 103 F.2d 117; Farr Co. v. Union Pacific Railroad Co., 10 Cir., 106 F.2d 437; Oklahoma Natural Gas Co. v. McKee, 10 Cir., 121 F.2d 583.

■ While in form an action for a declaratory judgment determining the rights and liabilities of the parties, respectively, in its major aspect the cause of action by the appellants was in substance an asserted past and continuing breach of covenant to conduct on the leased premises during the entire term of the lease a mercantile store dealing in the sale of high class merchandise similar in quality to that previously carried in stock by the appellants. It was implicit in the lease agreement that the parties contemplated that the appellee would use the premises for the conduct of a mercantile business. But the lease did not contain any provision that the appellee would conduct on the premises a business dealing in the sale of high class merchandise similar in quality to that previously handled and sold thereon by the appellants. The lease was completely silent in that respect. But the appellants rely upon an implied covenant obligating the appellee to conduct on the premises a business of that kind. Implied covenants are not favored in law. Smith v. Phlegar, 73 Ariz. 11, 236 P.2d 749; Formosa Corp. v. Rogers, 108 Cal. App.2d 397, 239 P.2d 88; 14 Am.Jur. p. 490; 21 C.J.S., Covenants, § 9, p. 888. And where a written agreement between contracting parties is seemingly complete, a court will not lightly imply an additional covenant enlarging its terms. Chapman v. Sheridan-Wyoming Coal Co., 338 U.S. 621, 70 S.Ct. 392, 94 L.Ed. 393; Baumer v. Franklin County Distilling Co., 6 Cir., 135 F.2d 384, certiorari denied, 320 U.S. 750, 64 S.Ct. 54, 88 L.Ed. 446; Ferroline Corp. v. General Aniline & Film Corp., 7 Cir., 207 F.2d 912, certiorari denied, 347 U.S. 953, 74 S.Ct. 678, 98 L.Ed. 1098; Lippman v. Sears Roebuck & Co., 44 Cal.2d 136, 280 P.2d 775; Danciger Oil & Refining Co. of Texas v. Powell, 137 Tex. 484, 154 S.W.2d 632, 137 A.L.R. 408. But if it is clear from all of the pertinent parts or provisions of the contract, taken together and

considered in the light of the facts and circumstances surrounding the parties at the time of its execution, that the obligation in question was within the contemplation of the parties or was necessary to carry their intention into effect, it will be implied and enforced. Sacramento Navigation Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663; Nevada Half Moon Mining Co. v. Combined Metals Reduction Co., 10 Cir., 176 F.2d 73, certiorari denied, 338 U.S. 943, 70 S.Ct. 429, 94 L. Ed. 581.

█ The lease agreement under consideration was prepared by an attorney representing the appellants. It was comprehensive in scope, bore clear tokens of painstaking preparation, and failed to indicate or suggest an unintentional omission of any provision necessary or essential to carry into full effect the complete understanding of the contracting parties. It fixed the term for which the premises were leased; specified the rental to be paid, both in respect to amount and time of payment; obligated the lessors to keep in a tenantable condition the outside of the building; obligated the lessors to install a certain type of store front; obligated the lessee to keep in repair the interior of the building; obligated the lessors to pay the taxes and insurance premiums on the building; made provision for the operation and maintenance of the heating facilities; made provision for the leasing of additional space at a later time if the parties could agree upon a further rental to be paid; and made it the duty of the lessee to return the premises in a like state of repair. The provision in respect to rental was clear. The monthly payment of $350 rental represented a substantial rental, not a mere nominal sum. A further sum was to be paid annually, based upon a percentage of gross sales. And rental was paid in strict accord with such terms of the agreement. We are clear in the view that the changing of the nature of the business conducted on the leased premises did not constitute a breach of an implied covenant the lease with resulting wrongful invasion of the rights of the appellants in respect to rental. Jenkins v. Rose's, 5, 10 and 25¢ Stores, 213 N.C. 606, 197 S.E. 174; Percoff v. Solomon, 259 Ala. 482, 67 So.2d 31, 38 A.L.R. 2d 1100; Cousins Investment Co. v. Hastings Clothing Co., 45 Cal.App.2d 141, 113 P.2d 878; Masciotra v. Harlow, 105 Cal.App.2d 376, 233 P.2d 586; William Berland Realty Co. v. Hahne & Co., 26 N.J.Super. 477, 98 A.2d 124; Dickey v. Philadelphia Minit-Man Corp., 377 Pa. 549, 105 A.2d 580; Palm v. Mortgage Investment Co., Tex.Civ.App., 229 S.W.2d 869; Weil v. Ann Lewis Shops, Tex.Civ. App., 281 S.W.2d 651. Appellants rely in part upon Cissna Loan Co. v. Baron, 149 Wash. 386, 270 P. 1022. But the lease involved in that case contained a provision expressly obligating the lessee to maintain on the leased premises a stock of merchandise of the same general character as that previously maintained thereon by the lessor. Appellants also rely in part upon Selber Bros. v. Newstadt's Shoe Stores, 203 La. 316, 14 So. 2d 10. No effort will be made to distinguish that case from this one. The case represents the minority view which we find ourselves unable to share.

██ Error is predicated upon the refusal of the court to submit to the jury the question of reparation in money for damages to the reputation of the building covered by the lease agreement. Recovery of damages cannot be had if there is uncertainty as to whether the rights of the complainant have been invaded. But damages may be awarded where there is no uncertainty as to whether the rights of plaintiff were invaded, even though there may be some uncertainty respecting the amount of damages sustained. It is not essential that the amount be proved with absolute certainty. It is enough if the evidence adduced is sufficient to enable the court or jury, as the case may be, to make a fair and reasonable approximation. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544; Hedrick v. Perry, 10 Cir., 102 F.2d 802. But here no evidence was adduced upon which the jury could predicate a

fair and reasonable approximation of the damage to the reputation of the building, and therefore the court providently declined to submit the issue to the jury.

The judgment is affirmed.