**MAYFAIR OPERATING CORPORATION, v. BESSEMER PROPERTIES, INCORPORATED.**

7 So. (2nd) 342            Division B
March 20, 1942       Rehearing Denied April 17, 1942

Albert B. Bernstein, and Harold Tannen, for appellant.

Loftin, Calkins, Anderson & Scott, for appellee.

TERRELL, J.:

In November, 1932, and in April, 1937, appellant and appellee entered into a lease agreement and a supplement thereto whereby appellant bound itself to operate a moving picture theatre belonging to appellee. The pertinent part of the agreement is summarized in the brief of appellee as follows:

"(a) To pay the plaintiff a minimum rental for the period January 1, 1937, to December 31, 1942, in monthly installments of $300 each, and in addition thereto, the amount, if any, by which 10% of its gross revenue should exceed $3,600 per year;

"(b) to 'use its best efforts to obtain and maintain the highest volume of business on the premises;'

"(c) to pay a minimum rental each year for the period beginning January 1, 1943, and ending December 31, 1946, to be computed on the basis of the entire rent (both minimum and percentage) payable for the years 1941 and 1942."

A difference arose as to the rights of the parties so appellee as plaintiff filed its bill of complaint and prayed for a declaratory decree construing the said argreement and supplemental agreement. Answer was filed and on final hearing on bill and answer, the

chancellor found for the plaintiff and refused to dismiss the bill. This appeal is from the final decree.

Two questions are urged for use to answer, viz: (1) Do the facts alleged in the bill of complaint state a cause for declaratory decree under the Florida statute, (2) Under the terms of the original and supplemental agreement was the defendant authorized to suspend operation of the theatre for any period during the life of the agreement or was it required to be operated continuously?

The first question is concluded by Sheldon v. Powell, 99 Fla. 782, 128 So. 258, wherein the constitutional validity of the act authorizing declaratory judgments in this State was upheld and wherein we also held that where parties were in doubt as to their rights under a contract a judicial determination may be had before wrong or injury is committed.

The second question presented is more difficult. The pertinent parts of the lease agreement have been epitomized in the forepart of this opinion. It requires payment to be made for the leased premises at a fixed monthly rental in addition to a percentage of the gross revenues. The agreement does not in terms authorize suspension of operation and the chancellor held that the defendant was required to operate its business as described in the lease continuously during the life of the lease.

It is shown that the appellant who was defendant below operated the theatre continuously for the years 1937 and 1938 but without the consent of appellee who was plaintiff below, failed to operate for approximately four months in 1939, during which no revenue was received, the result being that the gross revenue for that year was materially reduced in comparison

with the years 1937 and 1938, causing a substantial loss of rental to plaintiff.

Appellant contends that payment of the minimum rental entitles it to operate its business for such periods each year during the term of the lease as it may elect. It is alleged and not denied that defendant made improvements on the theatre not required in the lease, that the theatre business in Miami is seasonal and that the theatre was closed in the summer months in order to maintain a high standard of entertainment and that in 1935 defendant refused to enter into an agreement which required it to operate the theatre continuously throughout the year.

To support its right to suspend operating the theatre as shown, appellant relies on (1) the common law rule to the effect that a tenant has unrestricted use of the demised premises barring waste and illegal use, that is to say his dominion over the demised premises for the life of the lease is as absolute as that of the owner and he may use it in anyway he desires, (2) Jenkins v. Roses, 5-10-25c Stores, 213 N. C. 606, 197 S. E. 174, and Cousins Investment Company v. Hastings Clothing Company, 45 Cal. Appls. (2nd) 141, 113 Pac. (2nd) 878. On the basis of these cases, the common law rule and the ambiguity of the lease on this point appellant contends that since the rent is computed on a percentage of the gross revenues from the business and where a substantial minimum rent is guaranteed, no covenant can be implied which requires the tenant to operate its business continuously.

The chancellor found and the record shows that by closing the theatre for four months in 1939, the revenues were substantially reduced as compared with 1937 and 1938. The lease did not in terms authorize

closing the theatre at any time but required the defendant to "use its best efforts to obtain and maintain the highest volume of business on the premises." It was also agreed that the minimum rental for the period January 1, 1943, to December 31, 1946, should be computed at 75 per cent of the total rent for the years 1941 and 1942.

On the basis of these considerations, the chancellor found that the lease required the defendant to operate the premises continuously from January 1, 1939, to December 31, 1946. This holding appears supported by the current of decisions in this country construing leases based on a flat minimum rental in addition to a percentage of the gross revenue from the business done on the property. Cissna Loan Company v. Baron, 149 Wash. 386, 270 Pac. 1022; Sinclair Refining Company v. Giddens, 54 Ga. App. 69, 187 S.E. 201; Goldberg Corporation v. Levy, et al., 9 N.Y.S. (2nd) 304, 170 Misc. 292, see also 11 N.Y.S. (2nd) 315; Marvin Drug Company v. Couch, 134 S.W. (2nd) 356; Selber Brothers Inc. v. Newstadt's Shoe Stores, et al., 194 La. 654, 194 So. 579.

Considering the purpose actuating such leases, the construction placed on it by the parties and the fact that it contained no suspension clause we find no reason to overthrow the decision of the chancellor. The nicety observed in constructing such leases in this country would require that the right to suspend operating in the manner shown should be set out in the instrument to become available.

The decree appealed from is therefore affirmed.

Affirmed.

BROWN, C. J., CHAPMAN and THOMAS, JJ., concur.