## Richmond

### DAVID W. DAVIS, ET AL. v. JAMES A. WICKLINE.

April 27, 1964.

Record No. 5728.

Present, All the Justices.

*John D. Epperly (M. H. MacBryde, Jr.; Broaddus, Epperly & Broaddus, on brief), for the appellants.*

*Jackson L. Kiser (Young, Kiser & Frith, on brief), for the appellee.*

WHITTLE, J., delivered the opinion of the court.

Wickline filed a petition for declaratory judgment under § 8-578 of the Code of Virginia against Davis and others, lessors of a building which was to be erected for and used by Wickline as a drug store. The suit prayed for the construction of paragraph "Fourth" in the lease.

The point in issue between the parties was that Davis contended that paragraph "Fourth" of the lease "Contains a positive covenant (on the part of Wickline) to operate a drug store". Whereas,

Wickline contended that the paragraph was a restrictive covenant only, restricting the use of the building to that of a drug store. This was the sole issue in the case. The paragraph reads:

"Fourth: It is covenanted and agreed between the contracting parties that during the term of this lease the premises hereby leased shall be used for the purpose of a drug store and for no other purpose—and that during the term of this lease or any renewal thereof the lessee shall operate said premises as a drug store".

It was conceded by the parties that the language in the lease was plain and that there was no necessity for oral testimony to explain its meaning.

In deciding the case in Wickline's favor the trial court said: "Reading paragraph 'fourth' as a whole, it is my opinion that during the term of the lease the premises must be used as a drug store and for no other purpose. There is no affirmative duty on the lessee [Wickline] to operate a drug store throughout the term of the lease. Aside from the payment of the rent, the duty of the lessee is that if he occupies the premises for any purpose, it must be for the purpose of operating a drug store."

After operating the drug store in the demised premises for a period of time Wickline moved his operation to a new location but continued to pay the monthly rental as agreed.

In *Parrish* v. *Robertson*, 195 Va. 794, 800, 80 S.E. 2d 407, 410 the lessor entered into a written lease with the lessee whereby a building which was being constructed was leased to the lessee for a period of three years for the purpose of operating a restaurant therein. Lessee was to pay a rental of $250 per month plus 10% of the net profits derived from the operation of the business. Lessee operated a restaurant on the premises for eighteen months and then ceased operation and moved to another location. It was contended by the lessor that the lessee was required to operate a restaurant business for the full term of the lease and that the obligation was both express and implied by the covenant to pay in addition to the monthly rent 10% of the net profits.

In rejecting this contention we said: "It could hardly be contended that Parrish would have been obligated to continue the restaurant business if they were losing money. Acting in good faith, under such circumstances, they could close the business, thus limiting their obligation under the contract to the payment of the base rental of $250 per month."

What was said in the *Parrish* case applies with equal force to the case at bar. It can hardly be contended that Wickline intended to agree to continue to operate a drug store in this new, untried location for a period of ten years if the business was losing money. The factual posture of the case at bar is stronger for the construction adopted by the trial court than existed in *Parrish*, for in the instant case the rent is not tied into the profits made in the business.

In the case of *Congressional Amusement Corp.* v. *Weltman* (D.C. Mun. App. 1947) 55 A. 2d 95, the lessor sued for possession of the demised premises charging that the lessee had breached the lease by discontinuing the operation of a liquor store on the premises. A covenant in the lease provided in part: "That (lessee) *will use* said premises for the sale of alcoholic beverages * * * ". In holding that the covenant was restrictive only and did not impose an affirmative duty to operate a liquor store the court said:

"Reason and authority support the view that though the covenant unambiguously restricted the use of the premises to a liquor store, it did not require that it be used at all. When the parties sat down to draw the lease they had it in their power to make the use restrictions as mild or as strict as they desired (or could agree upon). If the lessor wished to impose upon the lessees the duty of continuing operation and continuing occupation of a liquor store it should have adopted language to make that duty clear.

" * * * Very clearly the language employed did not prescribe that such a store must be kept open and in operation throughout the lease term * * *. The law will not read into the covenant words of compulsion which are not there. The law does not say that by accepting the grant of premises for a particular purpose, with prohibition against its use for any other purpose, a lessee becomes affirmatively obligated to use it continually for such purpose." *Dougan* v. *H. J. Grell Co.*, 174 Wis. 17, 182 N.W. 350; *Weil* v. *Ann Lewis Shops*, (Tex. Civ. App.), 281 S.W. 2d 651; *Jenkins* v. *Rose's 5, 10 & 25¢ Stores, Inc.*, 213 N.C. 606, 197 S.E. 174; 38 A.L.R. 2d 1113 §§ 3 and 4.

The following annotation is found in Vol. 47 A.L.R., page 1134; " * * * (T)he tenant is under no obligation in the absence of specific provisions therefor, to occupy or use, or continue to use the leased premises even though one of the parties, or both, expected and intended that they would be used for the particular purpose to which they seem to be adapted or constructed."

In *Weil* v. *Ann Lewis Shops*, (Tex. Civ. App.), 281 S.W. 2d 651, 654, *supra*, it is said "Appellants contend that the written lease expressly provided that appellee should occupy and use the demised premises for a ladies' ready-to-wear store. * * * They first present the provision of the lease which states that the premises are rented 'for occupation and use as Ladies', Misses' and Children's ready-to-wear and accessories and not otherwise.' Clauses similar to this one have been construed in many cases, and it has never been held to be an agreement to occupy and use the demised premises, but only to restrict the purposes for which the premises may be used."

In *Dickey* v. *Philadelphia Minit-Man Corp.*, 377 Pa. 549, 105 A. 2d 580, 581 the court said: "Generally speaking, a provision in a lease that the premises are to be used only for a certain prescribed purpose imports no obligation on the part of the lessee to use or continue to use the premises for that purpose; such a provision is a covenant against a non-complying use, not a covenant to use." See also 38 A.L.R. 2d 1100.

In addition to what has been said two well defined rules of construction mitigate against the position urged by Davis in this case: (1) a contract of lease is to be construed favorably to the lessee and against the lessor; *Parrish* v. *Robertson, supra*, 195 Va. at page 800, and (2) breach of covenant to sustain forfeiture is construed strictly against forfeiture. The instrument must give the right of forfeiture in terms so clear and explicit as to leave no room for any other construction. M.J., Landlord & Tenant, § 9, pp. 650, 651; *Stonegap Colliery Co.* v. *Kelly*, 115 Va. 390, 79 S.E. 341, 48 L.R.A. (N.S.) 883.

Keeping these principles in mind an examination of paragraph "Fourth" of the lease is in order. The pertinent clauses are:

" * * * the premises hereby leased shall be used for the purpose of a drug store and for no other purpose."

This clause is clearly restrictive in nature, simply requiring the building to be used for no other purpose than a drug store. The remaining clause:

"and that during the term of this lease or any renewal thereof the Lessee shall operate said premises as a drug store".

This latter clause simply makes the restriction of the first clause applicable to the option to renew for a ten year term which was granted to Wickline under the lease.

If it had been intended by Davis that Wickline operate, at all

costs, a drug store for ten years, such a burdensome obligation should have been spelled out in clear and explicit terms and should have included some standard of measurement by which the conduct of Wickline could have been measured.

We have been cited to no authority, nor have we found any, supporting Davis' contention in this case. See Wests Digest, Landlord & Tenant, Key Nos. 34.(2) and 200.2; Contracts, Key No. 168.

For the reasons stated the judgment of the lower court is affirmed.

*Affirmed.*