SPORLEDER, Appellant, v. GONIS, Respondent.

*No. 342. Submitted under sec. (Rule) 251.54 February 5, 1975.— Decided June 3, 1975.*
(Also reported in 229 N. W. 2d 602.)

For the appellant the cause was submitted on the brief of *Charlton, Yanisch & Greco,* attorneys, and *Earl A. Charlton* and *Joseph J. Welcenbach* of counsel, all of Milwaukee; and for the respondent the cause was submitted on the brief of *Francis X. Krembs,* attorney, and *George E. Frederick* of counsel, both of Milwaukee.

HEFFERNAN, J. Donald F. Sporleder, a jeweler, commenced this action against Dr. John G. Gonis in Feb-

ruary, 1971. Sporleder alleged that Gonis breached a lease by refusing to permit Sporleder to occupy a location in the Village Court Shopping Center. On November 30, 1972, the jury returned a verdict finding that Gonis had breached the lease and awarded Sporleder $7,000 in damages. On Gonis' motion after verdict, the trial judge changed an answer in the verdict to find that Sporleder also had breached the lease. In addition, the trial judge concluded that the evidence was not sufficient to support the damage verdict. Judgment was entered in favor of Gonis, dismissing the complaint. Sporleder has appealed from the judgment.

On appeal, the issue is the sufficiency of the evidence: Was the evidence sufficient to sustain the jury's finding that Sporleder had not breached the lease, and was the evidence sufficient to sustain the jury's damage award.

We conclude that the evidence was sufficient to sustain the jury's verdict that Sporleder did not breach the lease. The order of the trial judge setting aside the jury verdict must be reversed.

The test for determining when a trial judge is warranted in changing the jury's verdict was stated in *Leatherman v. Garza* (1968), 39 Wis. 2d 378, 386, 159 N. W. 2d 18:

"The proper test to be applied in determining whether a jury's answer should be changed is 'whether there was *any credible evidence* which supported the jury's answer.'"

The court added, at page 387:

"While this court has said that it gives great weight to a trial court's decision that a verdict must be changed as a matter of law . . . the action of the trial court will be set aside on appeal if there is credible evidence which supports the verdict."

Dr. Gonis, lessor, contends that Sporleder abandoned the lease and, therefore, he was justified in letting the premises to another tenant.

"Abandonment, as applied to leases, involves an absolute relinquishment of premises by a tenant, and consists of act or omission and an intent to abandon." *Tuschoff v. Westover* (1964), 65 Wash. 2d 69, 73, 395 Pac. 2d 630.

That definition was followed in *Vawter v. McKissick* (Iowa 1968), 159 N. W. 2d 538, 540.

The facts show that, in February 1969, Sporleder entered into a lease with Gonis, a real estate developer, for space in a shopping center that Gonis was in the process of constructing.

A May 1969 supplement to the lease provided that, if the premises were not ready for occupancy by October 15, 1969, Sporleder, the lessee, had the option of delaying occupancy until January 20, 1970.

The property was not ready for occupancy on either of those dates, but on April 1, 1970, Gonis wrote Sporleder telling him that the space would be ready for decorating and fixturing on May 1, 1970, and the lease term would begin on June 1, 1970.

There was no further communication between Sporleder and Gonis until early June. Sporleder said he expected to be called by Gonis to be told when actual occupancy was possible. Gonis testified that he had tried to telephone Sporleder at his old shop and at his home but was unable to reach him. Sporleder testified that he never received a message from Gonis.

On June 9, 1970, Sporleder went to Gonis' office and found Rohr, another jeweler, there and discovered that Gonis was negotiating a lease of the property to Rohr. Sporleder made an appointment to talk to Gonis the next day, but Gonis did not show up. About the middle of June 1970, Gonis leased the premises to Rohr. Sporleder sued, claiming a breach of the lease.

It is not disputed that Gonis breached the lease. The jury so found, and that conclusion is not questioned. Rather, the question on this appeal is whether that breach was justified because of actions by Sporleder that showed his intention to abandon the lease.

The evidence upon which the jury could, and apparently did, rely showed that, during the interim between execution of the lease and the events of June 9, 1970, Sporleder bought new furniture for the office in the Gonis structure, put out contract proposals for decorating and fixturing the premises, and submitted copy to a radio station announcing a change in his place of business to the Village Court Shopping Center. He secured a telephone number of the new location and placed an advertisement in the yellow pages showing his new location. He testified that he visited the construction site weekly and found on June 9, 1970, that the area to be leased to him was not ready. The wall studding was in place but only partially covered by sheathing.

While some of this evidence was disputed, much of it is undisputed, and all of it is of a nature that could be believed by a jury. None of the evidence is incredible as a matter of law.

If there is any credible evidence to support a jury verdict, it must stand. An order of a trial judge setting aside a verdict supported by such evidence must be reversed.

The evidence stated above, if believed by the jury, shows without doubt conduct on the part of Sporleder that was completely inconsistent with any intent to abandon his rights under the lease. There is no evidence to show an intent to abandon. While there was testimony that Sporleder was a "perfectionist" and specific agreement had not been reached on some architectural details, this is not probative of an intent to abandon the lease. To the extent that it was offered for that purpose, the jury ignored it.

There was evidence to support the verdict. The order of the trial judge is in that respect reversed and the verdict reinstated.

Without discussing the evidence, the trial judge concluded that it was insufficient to sustain the jury's dam-

age award "in the amount of $7,000.00 or any other amount." We agree that the evidence fails to support a damage award of $7,000, but we cannot conclude that no damages should have been awarded.

Nor can we conceive of the experienced trial judge so concluding unless he intended to say that, in view of the plaintiff's failure to show liability, he was entitled to no damages.

Even though a trial judge concludes that no cause of action has been proved, where the damage question has been allowed to go to a jury, the trial judge should, if he questions the amount of damages awarded by the jury, state in what respect he finds the evidence insufficient to support the award.

Sporleder sustained some damages attributable to the breach for which he should be compensated.

Sporleder on appeal argues that the evidence was sufficient to support the damage verdict. He argues that there were three elements of damages the jury could consider: Lost profits, increased value of rental space, and out-of-pocket expenses.

The general rule for determination of damages in a breach of contract case was stated in *Dehnart v. Waukesha Brewing Co.* (1963), 21 Wis. 2d 583, 595, 596, 124 N. W. 2d 664:

"The fundamental basis for an award of damages for breach of contract is just compensation for losses necessarily flowing from the breach. Restatement, 1 Contracts, pp. 503 *et seq.*, sec. 329; 5 Williston, Contracts (rev. ed.), p. 3762, sec. 1338. It is a corollary of this rule that a party whose contract has been breached is not entitled to be placed in a better position because of the breach than he would have been had the contract been performed."

In *Caygill v. Ipsen* (1965), 27 Wis. 2d 578, 589, 135 N. W. 2d 284, quoting from McCormick, *Law of Damages*, p. 97, sec. 25, the court said:

" 'A classic statement of principle finds place in many opinions, as follows : "The damages . . . must be certain, both in their nature and in respect to the cause from which they proceed." ' "

As evidence of loss of profits, Sporleder introduced copies of his tax returns, showing that in 1969 he made $11,979.15, but in 1970 he made only $8,202.70. There was no evidence what his income would have been in the shopping center.

The evidence was not sufficient to permit Sporleder to recover damages for lost profits. In *Poposkey v. Munkwitz* (1887), 68 Wis. 322, 335, 336, 32 N. W. 35, the court stated that, when a business intended to move to a new location, but did not, the possible profits in that location would be too conjectural to permit recovery for lost profits.

Sporleder argues that the jury could have properly considered the increased value of rental space in arriving at the $7,000 damage figure. Sporleder's proof was confined to evidence that tended to show that the rental cost of property had appreciated approximately 10 percent since the signing of the lease. He argued, then, that he was damaged in the sum of 10 percent of the annual rent for a ten-year period. We conclude this evidence was not sufficient to permit the jury to assess damages at an inflated rental value.

In *Poposkey, supra,* page 333, this court said, where another premise is occupied in lieu of the leased premises:

". . . the rule of damages . . . will be the difference between the rent reserved in the lease and the actual rental value of the leased store for the purpose of carrying on such business therein. In such case the actual rental value would ordinarily be measured by the amount of rent the plaintiff would be compelled to pay for another store equally well adapted to his business."

Under that rule, the evidence presented by Sporleder was insufficient to sustain the damages awarded. He did

not show the rent that he would be compelled to pay for another store equally well adapted to his business purposes.

The trial judge also disallowed all out-of-pocket expenses that were allegedly incurred by the plaintiff.[1]

The evidence showed that some of these expenses were properly allocable in part to Sporleder's continued business, e.g., the insurance coverage was transferred to his present premises, the two chairs and the table are in use in his home and office, the vent hood remains in his possession, and there is no evidence of diminution of value.

Some of the expenses clearly should have been allowed but were eliminated as elements of damages because they had been taken as income tax deductions. Although Sporleder claimed deductions, there is nothing to show that these deductions made him whole. It is, rather, clear they did not, nor should those tax deductions inure to the benefit of the culpable party, Gonis. It is his responsibility to compensate Sporleder in full for his out-of-pocket expenses. It is the responsibility of Sporleder to then make his peace with the tax authorities.

Inasmuch as the out-of-pocket expenses are undisputed, they are computable from the record. We remand the cause to the trial judge for the purpose of assessing as damages the out-of-pocket expenses incurred by Sporleder attributable to the breach of the lease and for which there is evidence of record.

The trial court's judgment, to the extent it denies loss of profits and loss of rental value, is affirmed. To the

---

[1] $114.00 on liability insurance;
$ 16.95 on a vent hood;
$ 25.00 for consultation with an interior decorator;
$210.08 for two chairs and a table;
$250.00 to retain an attorney;
$228.15 to a radio station for an announcement of change of address;
$282.00 to the telephone company for an ad in the yellow pages.

extent it denies in toto the plaintiff's out-of-pocket expenses, it is reversed.

*By the Court.*—Judgment affirmed in part and reversed in part; and cause remanded for further proceedings consistent with this opinion.